## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Richard V. Dederer

### July 6, 1995

### Case No. (Criminal) M001408

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on defendant's plea in bar to the pending driving while under the influence charge. Defendant Richard V. Dederer claims that the Commonwealth cannot proceed further in this matter on the grounds of double jeopardy and collateral estoppel. The court held an evidentiary hearing on June 16, 1995, and took this matter under advisement. The Court has fully considered the evidence presented, the memoranda of counsel and the authorities cited therein, and each of the opinions written, to date, by my colleagues in the Virginia judiciary. For the reasons hereinafter set forth, the plea in bar is denied on both grounds.

On February 28, 1995, Dederer was arrested by Trooper T. L. Robison for a violation of § 18.2-266 of the Virginia Code. After his arrest, he was administered a breath test, and a Certificate of Breath Alcohol Analysis was prepared showing a result of .18 grams per 210 liters of breath. A warrant was issued by the magistrate alleging that in violation of § 18.2-266 of the Virginia Code, Dederer did "drive or operate a motor vehicle while having a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath or while under the influence of alcohol or intoxicants." Within minutes thereafter, Dederer was also served with a Notice of Administrative Suspension of Driver's License/Driving Privilege pursuant to Virginia Code § 46.2-391.2 (ALS).

On March 3, 1995, Dederer, by his counsel, filed a Motion for Review of Administrative Suspension of Driver's License/Driving Privilege with the Clerk of the Fairfax County General District Court as authorized by § 46.2-391.2(C). By Order entered March 6, 1995, Judge Jonathan Thacher rescinded the ALS suspension. The Order did not reflect whether the rescission arose out of a contested hearing or was consented to by the Commonwealth. No evidence on this issue was presented at the evidentiary hearing conducted by this Court on June 16, 1995.

Dederer alleges that he was "punished" by the suspension of his driving privileges pursuant to ALS and that further prosecution of the underlying DWI charge would violate his Fifth Amendment right against double jeopardy. He further argues that as a result of the rescission of the ALS suspension in the General District Court, the Commonwealth is collaterally estopped from presenting evidence to support a conviction of DWI. This Court will address both of these positions.

## I. *Double Jeopardy Argument*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. This protection has been held to prevent both successive prosecutions and successive punishments for the same criminal offense. *North Carolina v. Pearce*, 395 U.S. 711 (1969). Consequently, this Court's analysis of the double jeopardy issue must encompass three separate inquiries: (1) whether Dederer was punished, as that term has been defined in double jeopardy jurisprudence, by the seven day ALS suspension; (2) whether any such punishment was imposed in a "separate proceeding" from the DWI prosecution; and (3) whether any such punishment was for the same "offense" as the DWI. Dederer has the burden of proving that further prosecution of the DWI charge will violate his double jeopardy rights. *Low v. Commonwealth*, 11 Va. App. 48, 50 (1990).

### A. *The Punishment Prong*

The genesis of Dederer's double jeopardy argument arose in the trilogy of United States Supreme Court cases, *United States v. Halper*, 490 U.S. 435 (1989); *Austin v. United States*, — U.S. —, 113 S. Ct. 2801 (1993); and *Dept. of Rev. of Montana v. Kurth Ranch*, — U.S. —, 114 S. Ct. 1937 (1994). Taken together, these cases stand for the proposition that civil as

well as criminal sanctions can implicate the Fifth Amendment's Double Jeopardy Clause.

In *Halper*, the defendant had already been successfully criminally prosecuted for a violation of the Federal False-Claim Statute, 18 U.S.C. § 287, when the government filed an additional action under the Civil False-Claims Act. The Supreme Court held that the imposition of a civil sanction in the second proceeding violated the defendant's double jeopardy rights.

> The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads.

*Halper*, 490 U.S. at 447-48.

> Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the *purposes* actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.

*Id.* at 447, n. 7 (emphasis supplied).

An ambiguity in the Court's opinion in *Halper* left open the question whether a sanction, which serves both a remedial and a retributive or deterrent purpose would constitute punishment under a double jeopardy analysis.[1] This ambiguity was seemingly cleared up by the Court's decision in *Austin*. Although the *Austin* decision rested on Eighth Amendment rather than Fifth Amendment grounds, the Court's analysis was a logical extension of its decision in *Halper*. In holding that civil forfeiture proceedings instituted after a criminal prosecution for violation of federal controlled substance statutes implicated the Eighth Amendment's Excessive Fines Clause, the Court cited its decision in *Halper* and stated:

---

[1] Compare *Halper*, 490 U.S. at 448 ("a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as *also serving* either retributive or deterrent purposes, *is punishment*, as we have come to understand the term.") (emphasis supplied) *with Halper*, at 448-49 ("[w]e therefore hold that under the Double Jeopardy Clause, a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial *but only* as a deterrent or retribution.") (emphasis supplied).

Fundamentally, even assuming that §§ 881(a)(4) and (a)(7) serve some remedial purpose, the Government's argument must fail. "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving retributive or deterrent purposes is punishment, as we have come to understand the term."

*Austin*, 113 S. Ct. at 2812 (*quoting Halper*, 490 U.S. at 448) (emphasis in original).

In *Kurth Ranch*, the Court was confronted with a double jeopardy claim in the context of a Montana statute imposing a tax on possession and storage of dangerous drugs. The defendants therein were criminally prosecuted and sentenced for the underlying drug offense before Montana assessed a tax on the drugs which had formed the basis for their criminal prosecutions. While acknowledging that an analysis of the double jeopardy claim in that case, through use of *Halper's* test for civil penalties, was inappropriate, the Supreme Court nonetheless held that the tax imposed against the Kurths violated their rights under the Double Jeopardy Clause.

This drug tax is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment within the contemplation of a constitutional protection that has "deep roots in our history and jurisprudence," *Halper*, 490 U.S. at 440, 109 S. Ct. at 1987, and therefore must be imposed during the first prosecution or not at all. The proceedings Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time "for the same offence."

*Kurth Ranch*, 114 S. Ct. at 1948.

Any theory that this trilogy of Supreme Court decisions signaled the onset of an expansive revolution in double jeopardy jurisprudence has been seriously undermined by the Supreme Court's most recent pronouncement on double jeopardy. In *Witte v. United States*, — U.S. —, 115 S. Ct. 2199 (1995), the Court had its first opportunity to evaluate the Federal Sentencing Guidelines in the context of a double jeopardy analysis. In *Witte*, the defendant had been involved in a conspiracy to sell cocaine and marijuana in 1990 and 1991. He was initially indicted solely for charges relating to the 1991 marijuana distributions. However, consistent with the Guidelines, the District Court considered the 1990 sales of

cocaine and marijuana as "relevant conduct" in computing the appropriate sentence range for the 1991 marijuana sale. Notwithstanding a downward departure from the Guidelines because of the defendant's substantial co-operation, he was still sentenced to a term substantially in excess of what would have been the upper range of the Guidelines, if his 1990 conduct had not been considered. Witte was subsequently indicted for his involvement in the 1990 sale of cocaine and sought dismissal of the charge on double jeopardy grounds, arguing that his conduct in the 1990 cocaine transaction had been "taken into account" during the sentencing for the earlier marijuana conviction. The Supreme Court was not convinced. The six member majority opinion held that as long as a sentence imposed is within the limits established by the legislature, "the resulting sentence within that range constitutes punishment only for the offense *of conviction* for purposes of the double jeopardy inquiry." *Witte*, 115 S. Ct. at 2208. (Emphasis supplied.) Justice Scalia's concurring opinion signaled a basis for a potential retreat from the Court's *Halper* analysis, when he reasoned as follows:

> It is not true that (as the Court claims) "the language of the *Double Jeopardy Clause* protects against . . . the actual imposition of two punishments for the same offense." *Ante*, at 6. What the Clause says is that no person "shall . . . be subject for the same offence to be twice put in *jeopardy* of life or limb," U.S. Const., Amdt. V (emphasis added), which means twice prosecuted for the same offense. Today's decision shows that departing from the text of the Clause, and from the constant tradition regarding its meaning, as we did six years ago in *United States v. Halper*, 490 U.S. 435 (1989), requires us either to upset well-established penal practices, or else to perceive lines that do not really exist. Having created a right against multiple punishment *ex nihilo*, we now allow that right to be destroyed by the technique used on the petitioner here: "We do not punish you twice for the same offense," says the Government, "But we punish you twice as much for one offense solely because you also committed another offense, for which other offense we will also punish you (only once) later on." I see no real difference in that distinction and decline to acquiesce in the erroneous holding that drives us to it.

*Id.* at 2209-10 (Scalia, J., concurring). It is within the framework of these Supreme Court precedents that this Court must analyze the arguments advanced by the Commonwealth and Dederer.

One cannot dispute that the seven-day loss of one's driver's license, as a result of ALS, causes a temporary forfeiture to the driver. Nonetheless, relying primarily upon *Prichard v. Battle*, 178 Va. 455 (1941), *Anglin v. Joyner*, 181 Va. 660 (1943), and *Commonwealth v. Ellett*, 174 Va. 403 (1939), the Commonwealth argues that the opportunity to operate a motor vehicle upon the highways of the Commonwealth is a privilege, not a right, and therefore, the withdrawal of the privilege cannot constitute punishment for double jeopardy purposes.

While the Court agrees that this argument may be supported by the language of our Supreme Court's opinions in those cases, I do not agree that these cases are still binding precedent, as subsequent United States Supreme Court decisions have dismantled the basic framework upon which these decisions were built. In *Mackey v. Montrym*, 443 U.S. 1 (1979), cited extensively by the Commonwealth in its brief, the U. S. Supreme Court weighed the constitutionality of Massachusetts' "refusal" statute's mandatory license suspension against a due process challenge. Although it held that the statute withstood due process scrutiny, the court made it absolutely clear that a driver's license was a protected property interest. *Id.* at 10. *See also, Davis v. Love*, 431 U.S. 105, 112 (1977); *Bell v. Burson*, 402 U.S. 535, 539 (1971). These U.S. Supreme Court decisions overruled that basis for the decisions in *Prichard, Anglin* and *Ellett*, thereby foreclosing the argument advanced by the Commonwealth herein.

On brief, the Commonwealth next argues that *Prichard* and its progeny support the position that a suspension of a person's driver's license is a remedial measure, and therefore, does not run afoul of the holding in *Halper*. Even though this presents a much closer question, this Court also finds this argument unpersuasive. Although I agree that the purpose behind DMV's refusal to surrender the bond and collateral in *Prichard* was remedial and that other license suspensions, including those arising from Virginia's habitual offender statutory scheme, may be remedial in nature, I am unwilling to conclude that *all* license suspensions are remedial. Even if this Court were to agree that ALS was in part remedial, I would still have to find that the suspension herein constituted punishment for double jeopardy purposes, under the decisions in *Halper* and *Austin*, unless I concluded that the ALS suspension could "fairly be said solely to serve a remedial purpose . . . ." *Austin*, 113 S. Ct. at 2812. As I am unable to

conclude that the sole purpose behind ALS is remedial, this Court finds that the ALS suspension constitutes punishment for purposes of the Double Jeopardy Clause.

The rationale for my decision on this issue rests on independent legislative history and statutory construction grounds. In 1989, the Virginia General Assembly enacted Senate Joint Resolution No. 172 which empowered the Department of Motor Vehicles, VASAP, and the Transportation Safety Board to study administrative suspension of licenses for persons charged with DWI. These agencies were requested to submit their findings and recommendations to the Governor and the 1990 session of the General Assembly. Their report, entitled "Administrative Revocation of Driver's Licenses," Senate Document No. 8, included, among its findings, as follows:

### Deterrence

Many of those testifying or submitting written comments believe administrative license revocation serves not only as a *general deterrent* to potential drunk/drugged drivers, but also as a *specific deterrent* to those previously convicted of DUI. However, many felt that in order for this process to be effective, *the action must occur immediately and result in a punishment* severe enough to discourage drivers from ever driving intoxicated or under the influence of drugs in the first place [emphasis supplied].

The report went on to recommend that an administrative license revocation program be implemented in Virginia. In its 1994 session, the General Assembly acted on this recommendation by these agencies, which are integrally involved in combating drunk driving. The statute enacted requires immediate mandatory suspension, consistent with the findings set out in the agencies' report. This Court finds it difficult to believe that the General Assembly ignored the swift punishment and deterrent purposes set out in the report and enacted ALS *solely* for remedial purposes.

Even if this Court did not find the legislative history of ALS instructive and disregarded it, the conclusion on this issue would be unchanged. The clear meaning and effect of §§ 46.2-391.2 and 46.2-391.4 belie any claim that their purpose is solely remedial. Upon the issuance of the notice of an ALS suspension, the driver's license is suspended for a period of seven days. § 46.2-391.2 mandates that the clerk of the General District Court return the license upon the expiration of the seven-day period. There is no

requirement for alcohol evaluation or treatment in the seven-day period, and there is no logical reason to assume that a person who was a threat on the highways on day one would no longer be a threat on day eight. More-over, no distinction is made between a 0.08 first-time offender, who, after forty years of safe driving had toasted the bride and her friends at his daughter's wedding the evening of his arrest, and a full-scale alcoholic who had registered a 0.32 in what would be his third DWI conviction in less than four years. It is hard to conceive how the latter driver would suddenly cease to be a danger on the highways after the expiration of seven days or how the former driver would represent a threat to anyone on the highways after the effect of the champagne from the wedding had worn off. Nonetheless, if the father entered a plea of guilty to the DWI charge the next day and the General District Court judge found it compat-ible with the public interest to grant him a restricted license pursuant to § 18.2-271.1 of the Code, § 46.2-391.2(D) would preclude the issuance of the restricted permit until the entire seven-day ALS suspension had ex-pired. Furthermore, if the alcoholic's DWI case were tried that same day while the defendant was still intoxicated, if an inexperienced prosecutor forgot to prove venue at the trial, the acquittal would result in the *imme-diate* rescission of the ALS suspension, pursuant to the clear language of § 46.2-391.4 of the Code.

While this Court is not unmindful of the various appellate cases in other jurisdictions which have held that their versions of ALS were remedial in nature and therefore not punishment,[2] it simply stretches credulity beyond reasonable limits to believe that Virginia's ALS suspension scheme is *solely* remedial. Accordingly, this Court finds that the seven-day suspen-sion, required in all cases by ALS, constitutes punishment under the Double Jeopardy Clause.

### B. *Separate Proceeding Prong*

The double jeopardy bar precluding multiple punishments for the same offense is implicated only when the punishments are handed down in *separate proceedings. Missouri v. Hunter*, 459 U.S. 359 (1983). In a single proceeding, the double jeopardy analysis is limited to a determination of whether the cumulative punishment exceeds the maximum punishments authorized by the legislature. *Halper*, 490 U.S. at 450. "Where . . . a

---

[2] *See* those cases cited in the Commonwealth's brief at page 9, all of which were decided before the Supreme Court's decision in *Austin.*

legislature specifically authorizes cumulative punishment under two statutes . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368-69. This Court must therefore determine whether the seven-day ALS license suspension is imposed in a "proceeding" separate from the underlying DWI charge.

Although there is no binding precedent on this issue, various Virginia statutes and appellate decisions are instructive. Initially, it is clear that the proceeding must be a judicial proceeding in order to invoke double jeopardy protection. In *Wild v. Commonwealth*, 18 Va. App. 716 (1993), the Court of Appeals rejected Wild's double jeopardy claim, in part, because the sanctions previously imposed upon him by the Department of Corrections were the result of an *administrative hearing*. "The Department of Correction's administrative hearing was not *a judicial proceeding* or prosecution and the administrative punishment imposed by prison officials did not render the subsequent judicial proceeding violative of the prohibition against double jeopardy." *Id.* at 719 (emphasis supplied).

Upon a determination by a magistrate that probable cause exists for the issuance of a warrant for DWI, the ALS suspension automatically goes into effect, if the other conditions of ALS have been satisfied. As it is the decision of the magistrate which is the key to invoking the seven-day suspension, this Court must determine whether a magistrate is then acting as a *judicial* rather than *administrative* officer. Article VI, Section 8, of the Virginia Constitution provides in part:

> The General Assembly may provide for *judicial* personnel, such as judges of courts not of record and *magistrates* or justices of the peace and may prescribe their jurisdiction and provide the manner in which they shall be selected and the terms for which they shall serve [emphasis supplied].

Va. Code § 19.2-48.1 requires that a magistrate's quarters "should be located in a public facility and should be appropriate to conduct the affairs of a *judicial officer*" (emphasis supplied). Magistrates have also long enjoyed absolute judicial immunity against claims for libel or slander. *Penick v. Ratcliff*, 149 Va. 618 (1927). *See also, Darnell v. Davis*, 190 Va. 701, 707-08 (1950). Accordingly, this Court finds that the proceeding before the magistrate on the night of Dederer's arrest was a judicial proceeding, and *Wild* is therefore inapposite.

The determination of this prong of the double jeopardy analysis must therefore rest on whether the ALS suspension and the DWI prosecution were part of one or successive proceedings. Again, while there is no binding precedent, some guidance can be gleaned from the decisions of our Supreme Court and Court of Appeals. In *Sigmon v. Commonwealth*, 200 Va. 258 (1958), the Supreme Court interpreted the word "proceeding" in the context of § 19-232 of the Code, the predecessor to the current § 19.2-294.[3] It noted that the leading dictionaries defined proceeding as "broad enough to cover any act, measure, step or *all steps* in a course taken in conducting litigation, civil or criminal." *Id.* at 267 (emphasis supplied). In *Slater v. Commonwealth*, 15 Va. App. 593 (1993), the Court of Appeals held that § 19.2-294 does not apply to *simultaneous prosecutions*. In so deciding, the *Slater* court cited the Court of Appeals' *en banc* decision in *Hall v. Commonwealth*, 14 Va. App. 892 (1992), and the Court's decision in *Freeman v. Commonwealth*, 14 Va. App. 126 (1992). In *Freeman*, the defendant had been charged with statutory burglary of his estranged wife's home and with petty larceny of her property. The misdemeanor case was concluded in the juvenile court, but the burglary charge, a felony, had to be subsequently tried in the Circuit Court. Freeman asserted the defense of double jeopardy in the Circuit Court case. In affirming the denial of the double jeopardy plea, the Court of Appeals reasoned as follows:

> The burglary and larceny charges were instituted simultaneously by the issuance of warrants which were brought together for hearing in the juvenile and domestic relations court . . . . The amenability of the misdemeanor charge to early conclusion, whereas the felony charge required further proceedings, all pursuant to established rules of procedure, does not alter the fact that these were *concurrent*, not *successive*, prosecutions.

*Id.* at 128 (emphasis supplied).[4]

---

[3] The first paragraph of § 19.2-294 now reads, in part, "if the same act be a violation of two or more statutes, or of two or more ordinances or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others."

[4] The decision in *Freeman* was based, in part, on the United States Supreme Court's decision in *Grady v. Corbin*, 495 U.S. 508 (1990), which has subsequently been overruled. As a result, although instructive, the *Freeman* decision is not binding on this Court.

The notion of concurrent, rather than consecutive prosecutions, in the double jeopardy context, has recently been embraced by two United States Courts of Appeal. In *U.S. v. Millan*, 2 F.3d 17 (2d Cir. 1993), warrants for criminal arrests and civil seizures were issued on the same day, based on the same affidavit, by the same judge. The district court gave separate case numbers to the civil and criminal cases. A stipulation was reached in the civil case, whereby the defendants agreed to relinquish any claims to over $100,000 in various bank accounts. The defendants then moved to dismiss the criminal charges based upon the *Halper* decision. The District Court denied the motion, finding, *inter alia*, that the civil and criminal prosecutions constituted a single proceeding. The Court of Appeals affirmed, noting that the *Halper* opinion itself had stated that "[t]he decision [does not] prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Id.* at 20 (*quoting Halper*, 490 U.S. at 450). The Court of Appeals further found that the existence of separate files for the civil and criminal cases was not dispositive, as federal rules of procedure required such docketing.

> Therefore, courts must look past the procedural requirements and examine the essence of the actions at hand by determining when, how, and why the civil and criminal actions were initiated. In the instant case, we note that the actions were both started on July 30, 1991, when arrest and seizure warrants were issued based on the same affidavit by a DEA agent. These warrants were issued as part of a coordinated effort to put an end to an extensive narcotics conspiracy. We therefore must conclude that the civil forfeiture suit and the criminal prosecution at issue here constituted a single prosecution against the Bottones.

*Id. See also United States v. One Single Family Residence*, 13 F.3d 1493 (11th Cir. 1994); *contra United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir. 1994).[5]

Dederer urges this Court to reject the decisions in *Millan* and *Single Family Residence* based upon the Court of Appeal's *en banc* decision in *Small v. Commonwealth*, 12 Va. App. 314 (1991). In *Small*, separate civil and criminal contempt proceedings were instituted as a result of a viola-

---

[5] The 9th Circuit noted in its opinion that the criminal and civil forfeiture actions in *U.S. Currency* were instituted at *separate* times.

tion of an injunction prohibiting certain conduct in contravention of the Virginia Home Solicitation Sales Act. The contempt proceedings were initially consolidated for trial but were then severed because of a failure to properly serve the criminal warrant. After sanctions were imposed for civil contempt, the defendant moved to dismiss the criminal proceeding on the ground of double jeopardy. The motion was denied by the trial court. The Court of Appeals reversed, holding that part of the sanction in the civil contempt proceeding was punitive in nature, and as a result, *Halper* was controlling. However, the majority opinion never addressed the separate proceeding prong of the double jeopardy analysis. Although the majority opinion noted that both the civil and criminal contempt proceedings were initiated within four months of the entry of the decree enjoining the defendant, it did not set out whether the proceedings were instituted at the same time, nor whether the proceedings related to acts occurring at the same time. The opinion focused solely on the civil/criminal punishment question. While the four-member dissent argued that the Commonwealth had sought civil and criminal sanctions in the "same proceeding," it too failed to delineate when each of the proceedings had been instituted. As a result, the decision in *Small* cannot be dispositive of this issue.

Dederer also argues that the nature and course of the potential ALS proceedings in the General District Court mandate a finding that the ALS punishment is imposed in a separate proceeding. He contends that (1) the existence of separate court dates if rescission of the suspension is sought; (2) the existence of two files, one in the traffic division and the other in the civil division; (3) the differing burdens of proof between the rescission hearing and the DWI trial; (4) the priority afforded the rescission hearing on the court's docket; and (5) the differing times of finality for the ALS and DWI orders, all compel a finding that these proceedings are separate for double jeopardy purposes. Dederer misconstrues § 46.2-391.2 and mistakes the proceeding at which the ALS punishment is in fact imposed. Section 46.2-391.2 mandates that the seven-day license suspension takes effect immediately upon the issuance of the warrant for DWI, if either a refusal of a 0.08 or greater breath test result has occurred. It is at that time, before the magistrate, when the ALS punishment is imposed. Section 46.2-391.2(C) provides the defendant with the right to have the General District Court review the suspension, which is then necessarily in place. In the ALS hearing, before the General District Court, no punishment can possibly be imposed as the General District Court judge can only rescind or affirm the previously-imposed suspension. Consequently, the procedures

in the General District Court and the burdens of proof at the review hearing are totally irrelevant for double jeopardy purposes. The review hearing is merely a statutorily-created right of appeal from the magistrate's decision, at which only the defendant can be granted affirmative relief.

Although this Court finds the decisions in *United States v. Millan* and *Freeman v. Commonwealth* convincing, I need not embrace the "concurrent prosecution" theory in order to find that the ALS suspension is imposed in the same proceeding as the DWI prosecution. Pursuant to § 46.2-391.2, if the conditions of ALS exist, the suspension is automatically imposed once the magistrate initiates the formal criminal proceedings for driving while under the influence by issuing the criminal warrant. The suspension is therefore an inextricable incident to the DWI prosecution. It arises from the same officer's testimony, at the same exact time, before the same judicial officer, as the *first step* in the DWI prosecution. *Sigmon*, 200 Va. at 267.

The policies underlying the Fifth Amendment's double jeopardy protection also do not support a finding of separate proceedings. The possibility that a government, dissatisfied with the first punishment, might seek an additional punishment (*see Halper*, 490 U.S. at 451, n. 10) cannot occur, as the ALS punishment is a mandatory penalty for a specified period; nor is the defendant subject to repeated prosecutions which expose him to "embarrassment, expense, and ordeal." (*Green v. United States*, 355 U.S. 184 (1957)); nor does it violate principles of finality (*see United States v. Wilson*, 420 U.S. 332, 343 (1975)); nor increase the risk of a mistaken conviction (*see United States v. Dixon*, — U.S. —, 113 S. Ct. 2849, 2877 (1993) (White, J., concurring)); nor does it provide the government with an opportunity to rehearse the presentation of its evidence, "honing its trial strategies and perfecting its evidence through successive attempts at conviction." (*Tibbs v. Florida*, 457 U.S. 31, 41 (1982)). None of these policies is implicated in the ALS context.

Finally, this Court rejects any argument that different stages of a prosecution constitute separate proceedings for double jeopardy purposes and that the ALS punishment involved at the warrant stage of a DWI prosecution, therefore precludes additional punishment, upon conviction for DWI. Acceptance of that position would necessarily countenance illogical arguments and potential results (e.g., defendant who is denied bond on basis of seriousness of the offense could not again be punished upon conviction; defendant who is fined and granted a suspended sentence could not subsequently be punished again by having the sentence revoked upon viola-

tion of probation) which are totally unsupported by any precedent. Accordingly, this Court finds that the seven-day ALS suspension is imposed in the same proceeding as the underlying DWI case, and the defendant's plea of double jeopardy must therefore be overruled.

## C. *Same Offense Prong*

Even if this Court had ruled in favor of the defendant on the second prong of the double jeopardy analysis, his plea would nonetheless fail because § 46.2-391.2 does not set out punishment for the "same offense" as DWI.

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court formulated the so-called "same elements" or "Blockburger" test to determine whether two offenses were separate or identical for double jeopardy purposes.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

*Id.* at 304. This test survived unchanged as the cornerstone of double jeopardy jurisprudence until the Court's decision in *Grady v. Corbin*, 495 U.S. 508 (1990). The *Grady* decision added a "second tier" to the same offense determination. If the offenses passed the Blockburger test, then a court would have to determine "if to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the Defendant has already been prosecuted." 495 U.S. at 510. If so, the prosecution would be barred by the Double Jeopardy Clause.

*Grady v. Corbin's* existence was short-lived. In 1993 it was expressly overruled in *U.S. v. Dixon*, — U.S. —, 125 S. Ct. 2844 (1993). The views of the justices were severely splintered in *Dixon* leading to five separate opinions. While the justices could reach no clear consensus on the precise test to be applied in *successive prosecution* cases, there was near unanimity that the same elements test should be strictly applied in claims of

*successive punishment.*[6] It is within the framework of *Dixon's* resurrection of the strict Blockburger analysis, in multiple punishment cases, that this Court must analyze the final double jeopardy prong.

The elements supporting an ALS suspension are (1) refusal to take a breath test or a breath test result of 0.08 or greater; and (2) the issuance of a warrant for DWI. The elements of a violation of § 18.2-266 are (1) operation of a motor vehicle; (2) while under the influence of alcohol or other self-administered intoxicants. ALS therefore requires proof of a refusal or a breath test result of 0.08 or above. Neither is an element of a violation of § 18.2-266. DWI requires proof that the defendant was under the influence while operating a motor vehicle, which is not an element of ALS. As each "offense" contains a necessary element which is not an element of the other "offense," they cannot constitute the same offense under the Blockburger test.

The Court's analysis of this issue is not affected by the wording of the warrant in this case, which alleges that the defendant operated a motor vehicle while having a BAC of 0.08 or above *or* that the defendant was under the influence of alcohol or other intoxicants for two separate reasons. First, in *Doss v. Commonwealth*, No. 2003-93-3 (Va. App. May 9, 1995) (unpublished), the Court of Appeals was faced with a double jeopardy question arising out of an automobile accident, which led to charges of DWI and involuntary manslaughter. The defendant had pleaded guilty in the General District Court to the DWI charge and had then challenged the manslaughter charge on grounds of double jeopardy. The Court of Appeals affirmed the trial court's denial of the double jeopardy plea, in part, for the following reasons:

> We reject this contention because we cannot determine on the record before us that the defendant had been convicted previously of violating subdivision (ii), (iii), or (iv) of Code § 18.2-266, rather than subdivision (i). The record reflects only that he was convicted in the general district court of "unlawfully operat[ing] a motor vehicle while intoxicated," a "violation of § 18.2-266, Code of Virginia." The record does not prove that he

---

[6] Only Justice Blackmun, concurring in part and dissenting in part, did not expressly endorse a strict Blockburger analysis in cases of cumulative punishment. His opinion did not address the issue.

was convicted of violating subdivision (ii), (iii), or (iv) of Code § 18.2-266, as opposed to subdivision (i) of that section.

*Doss*, slip op. at 2-3.

The Court of Appeals has therefore ruled that each subsection of § 18.2-266 is a separate offense, rather than separate means to prove the same offense.[7] This interpretation of § 18.2-266 is consistent with the plain meaning of the language of Va. Code § 18.2-269 which reads in part, "[i]n any prosecution for a *violation of* § 18.2-36.1 or *§ 18.2-266(ii)* . . . the amount of alcohol in the blood of the accused at the time of the alleged offense . . . shall give rise to the following rebuttable presumptions" (emphasis added). In this statute, the General Assembly is stating that one can be prosecuted for a violation of a specific subsection of § 18.2-266. If a violation of § 18.2-266(ii) were not different from a violation of § 18.2-266(i), there would have been no reason for the General Assembly to have enacted § 18.2-269, as anyone prosecuted for a violation of § 18.2-266, who registered a 0.08 or above on the breath test, would necessarily be guilty under section (i), and there would have been no need to create the presumption set out in § 18.2-269(3). As the Commonwealth stipulated at oral argument in this case that it would not seek a conviction based upon § 18.2-266(i), it is clear that each of the "offenses" in this case contains an element not contained in the other and are therefore not the "same offense" for double jeopardy purposes.

Even if § 18.2-266 were one offense, with the subsections delineating means of proving the offense, the same elements test would still not be met. Absent a refusal, *a breath test result* of 0.08 or above is a necessary element of an ALS suspension. To the contrary, the element necessary to satisfy § 18.2-266(i) or to create a presumption under § 18.2-266(ii) is to operate a motor vehicle *while the driver's blood alcohol level* is 0.08 or above. *See Davis v. Commonwealth*, 8 Va. App. 291 (1989). Although a presumption exists that the *driver's* blood/alcohol level *at the time of the test* is identical to the level at *the time of the operation of the motor vehicle*, this presumption is rebuttable. *Id.* at 300. Consequently, the necessary elements for ALS and DWI are distinct, and ALS and DWI cannot constitute the "same offense" for double jeopardy purposes. Accordingly,

---

[7] A different panel of the Court of Appeals had previously ruled to the contrary in *Commonwealth v. Graham*, No. 2292-91-3 (Va. App. June 22, 1993) (unpublished). I find the decision in *Doss* more convincing for the reasons articulated herein.

the defendant's plea of double jeopardy must therefore be denied for this additional reason.

## II. *Collateral Estoppel*

Dederer contends that even if his plea of double jeopardy is rejected, the Commonwealth should be precluded from proceeding against him on the DWI charge, based upon the doctrine of collateral estoppel. Collateral estoppel, a form of res judicata, is a judicially-created doctrine resting upon a public policy favoring finality of judgments, end to litigation between parties, and prevention of harassment of litigants. *Commissioner v. Summer*, 333 U.S. 591, 597 (1948); *Bates v. Devers*, 214 Va. 667, 670 (1974). Although arising originally in civil litigation, in criminal cases it can become a constitutional requirement embodied in the Fifth Amendment. *Ashe v. Swenson*, 397 U.S. 436 (1970); *Lee v. Commonwealth*, 219 Va. 1108 (1979). In the context of criminal law, the doctrine establishes that once an *ultimate* issue of fact has been *litigated* and determined by a *final* judgment, that issue cannot subsequently be re-litigated by the identical litigants in a future lawsuit. *Ashe v. Swenson*, 397 U.S. at 453; *Copeland v. Commonwealth*, 13 Va. App. 450, 453 (1991). The burden of establishing the elements of estoppel rests with the party who seeks its protection. *Simon v. Commonwealth*, 220 Va. 412, 418 (1979); *Clodfelder v. Commonwealth*, 218 Va. 98, 106, rev'd on other grounds, 218 Va. 619 (1977). In order to meet this burden, the moving party "has the burden of proving that the precise issue or question he seeks to preclude was raised and determined in the first action." *Id.* at 106; *Rhodes v. Commonwealth*, 223 Va. 743 (1982).

At the evidentiary hearing in this matter, Dederer's sole evidence on this issue was the rescission order entered by the General District Court. This order does not establish the basis for the rescission, nor whether it arose by agreement, or as a result of a contested hearing.

Therefore, even if this Court were to find that an order arising from an ALS hearing was a *final* order based upon the resolution of an *ultimate* issue of fact,[8] the predicate for invoking the doctrine of collateral estoppel would still not have been established, as there is no evidence that the issue of probable cause for arrest on the charge of DWI was ever *actually litigated* in the General District Court. *See Ashe*, 397 U.S. at 443; *Cope-*

---

[8] This Court makes no such findings on the record in this case.

*land,* 13 Va. at 453. On this basis alone, the plea of collateral estoppel must fail.

However, even if the evidence had established that the probable cause issue had actually been litigated in the ALS hearing, this Court's ruling would be no different. Although collateral estoppel can reach constitutional dimensions in the context of criminal cases, as a doctrine flowing from the Fifth Amendment's Double Jeopardy Clause, each of the cases supporting that principle involved application of the doctrine after an ultimate issue of fact was determined in a *criminal* trial *after jeopardy attached. See Ashe,* 397 U.S. at 476-77; *Rhodes,* 223 Va. at 749 ("an *acquittal* in a prior trial precluded the Commonwealth from offering evidence in a subsequent trial upon any issue of fact which had been necessarily decided in the acquittal.") (emphasis supplied); *Simon v. Commonwealth,* 220 Va. at 418; *C.A. Jones v. Commonwealth,* 217 Va. 231, 233 (1976) (collateral estoppel is applicable only when the prior *acquittal* necessarily decided the issue now being litigated). ALS is clearly a civil action. *See Commonwealth v. Rafferty,* 241 Va. 319 (1991); *Deaner v. Commonwealth,* 210 Va. 285, 293 (1969). As such, jeopardy never attached at the § 46.2-391.2(C) hearing, and the constitutional bars of double jeopardy and collateral estoppel could not arise from determinations of fact made at that hearing. Therefore, any issue of collateral estoppel arising from the § 46.2-391.2(C) review hearing must be decided by the doctrine as applied in civil cases.

As collateral estoppel is a judicially-created doctrine, it is subject to modifications or limitations enacted by the legislature. *See Pembroke Limestone Works v. Commonwealth,* 145 Va. 644, 651-52 (1926). In the second paragraph of § 46.2-391.2(C), the General Assembly has enacted such a limitation:

> The court's findings are without prejudice to the person contesting the suspension or to any other potential party as to any proceedings, civil or criminal, and shall not be evidence in any proceedings, civil or criminal.

The clear intent of that portion of the statute is to preclude the application of collateral estoppel to any findings made at the ALS review hearing. Dederer argues that the restriction does not insulate the Commonwealth from a plea of collateral estoppel because it is an actual, rather than *potential* party to future proceedings. In interpreting a statute, a court must assume that the legislature had a reason for the inclusion of each word

contained in the statute. *Board of Supervisors v. Wood*, 213 Va. 545, 548 (1973); *Smith v. Commonwealth*, 8 Va. App. 109, 113 (1989). Dederer urges the Court to interpret the phrase "potential party" in an illogical manner. If the General Assembly had intended that this subsection not affect the Commonwealth, it would not have included *criminal proceedings* within its scope, as the Commonwealth will virtually always be a party to any criminal proceedings wherein collateral estoppel could apply.

The doctrine of collateral estoppel is intended to apply after a matter has been fully litigated between the parties, as a necessary incident to a final judgment. *Bates v. Devers*, 214 Va. 667, 670 (1974). The priority scheduling of a review hearing authorized by § 46.2-391.2 is inconsistent with either the Commonwealth or the Defendant being then totally prepared to fully litigate the issues involved. The arresting police officer may be unavailable, and insufficient time may exist for either the Commonwealth or the Defendant to subpoena a citizen witness. As a result, it was logical for the General Assembly to preclude the collateral estoppel bar from arising in what would generally be a limited, if not summary, hearing. Accordingly, for each of the reasons set out above, the defendant's plea of collateral estoppel is also denied.